UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
and STATE OF FLORIDA,
*ex rel*. THOMAS BINGHAM,

     Plaintiffs,

v.                                                             CASE NO. 8:14-cv-73-T-23EAJ

BAYCARE HEALTH SYSTEM,

     Defendant.

_____/

## ORDER

The *qui tam* relator, Thomas Bingham, sues (Doc. 32) BayCare Health System

under the federal False Claims Act and the Florida False Claims Act.  BayCare

moves (Doc. 37) to dismiss under Rules 9(b) and 12(b)(6), Federal Rules of Civil

Procedure.[1]

## BACKGROUND[2]

BayCare is a Florida non-profit corporation that owns St. Anthony's Hospital,

Inc., and St. Anthony's Professional Buildings and Services, Inc.  The relator alleges

---

[1] Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Rule 12(b)(6) states that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."

[2] For the purpose of resolving BayCare's motion, the allegations of the amended complaint (Doc. 32) are accepted as true.

that BayCare in violation of the Stark Statute and the Anti-kickback Statute

"deliberately obscured remuneration it paid physicians to induce them to refer

patients" and that BayCare in violation of the False Claims Act and the Florida False

Claims Act submitted claims from those referrals to the government.[3]  (Doc. 32 ¶¶ 1,

2, 4)

The relator, who is a "Certified General Real Estate Appraiser" residing in

Nashville, Tennessee, claims no relationship with BayCare, St. Anthony's Hospital,

or St. Anthony's Professional Buildings and Services.  Instead, the relator "employed

his skills and experience as a commercial real estate appraiser in uncovering the

schemes alleged in [the] Complaint."  (Doc. 32 ¶ 8)

**1. False Claims Act**

"The False Claims Act is the primary law on which the federal government

relies to recover losses caused by fraud."  *McNutt ex rel. United States v. Haleyville Med.*

*Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005).  Under 31 U.S.C. § 3729(a)(1)

and (a)(2), the False Claims Act imposes liability on any person who "knowingly

presents, or causes to be presented, a false or fraudulent claim for payment or

approval" or "knowingly makes, uses, or causes to be made or used, a false record or

statement material to a false or fraudulent claim."  Because compliance with the

---

[3] Because "the Florida False Claims Act mirrors the federal False Claims Act and is subject
to the same pleading standard," *United States v. All Children's Health Sys.*, 2013 WL 1651811,
at *5 (M.D. Fla. Apr. 16, 2013) (Whittemore, J.), this order focuses on the federal False Claims Act.

Stark Statute and the Anti-kickback Statute is a prerequisite for Medicare payments, a violation of either of these statutes can form the basis of liability under the False Claims Act.

## 2. Stark Statute

Generally, the Stark Statute, 42 U.S.C. § 1395nn, "prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital" and "prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such patients."[4] *United States ex rel. Mastej v. Health Mgmt. Assocs.*, 591 Fed. Appx. 693, 698 (11th Cir. 2014) (Hull, J.). A "financial relationship," as defined by Section 1395nn(a)(2)(B), is a "compensation arrangement" between a physician and a hospital. Under the regulations implementing the Stark Statute, a "compensation arrangement" is "any arrangement involving any remuneration," and "remuneration" is "any payment or benefit, made directly or indirectly, overtly or covertly, in cash or in kind." 42 C.F.R. §§ 411.351, 411.354(c).

The Stark Statute prohibits forms of direct and indirect compensation arrangements. A direct compensation arrangement "exists if remuneration passes between the referring physician . . . and the [hospital] without any intervening persons or entities." 42 C.F.R. § 411.354(c)(1). An indirect compensation

_____

[4] To be prohibited under the Stark Statute, a referral must be "for the furnishing of designated health services," which are listed in Section 1397nn(h)(6).

arrangement exists if (1) remuneration passes through an "unbroken chain" between the referring physician and the hospital; (2) the "referring physician . . . receives aggregate compensation . . . that varies with, or takes into account, the volume or value of referrals or other business generated by the referring physician for the [hospital];" and (3) the hospital "has actual knowledge of, or acts in reckless disregard or deliberate ignorance of, the fact that the referring physician . . . receives [the described] aggregate compensation."  42 C.F.R. § 411.354(c)(2).

However, not every compensation arrangement constitutes a prohibited financial relationship under the Stark Statute.  For example, "indirect compensation arrangements do not constitute a 'financial relationship' if the compensation is (1) equal to the 'fair market value for services and items actually provided'; (2) 'not determined in any manner that takes into account the volume or value of referrals or other business generated by the referring physician' for the hospital; and (3) 'commercially reasonable.'"  *United States v. All Children's Health Sys.*, 2013 WL 6054803, at *4 (M.D. Fla. Nov. 15, 2013) (Whittemore, J.) (quoting 42 C.F.R. § 411.357(p)); *see also* 42 C.F.R. § 411.357(a) (describing a lease permitted under the Stark Statute).

**3. Anti-kickback Statute**

Under the Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b), a hospital commits a felony by financially inducing a physician to refer a Medicare patient.  Specifically, 42 U.S.C. § 1320a-7b(b)(2) prohibits "knowingly and willfully offer[ing] or pay[ing]

- 4 -

any remuneration (including any kickback, bribe, or rebate) directly or indirectly,

overtly or covertly, in cash or in kind to any person to induce such person . . . to refer

an individual to a person [for medical services] for which payment may be made in

whole or in part under a Federal health care program." The exceptions to the Anti-

kickback Statute closely parallel the exceptions to the Stark Statute. *See* 42 C.F.R.

§ 1001.952(b) (describing a lease permitted under the Stark Statute).

### 4. Violations of the Stark Statute and Anti-kickback Statue

The alleged scheme in this *qui tam* action "involve[s] construction of medical

office buildings, common areas, walkways and garages on the St. Anthony's Hospital

campus, and the leasing arrangements between Baycare proxies (the

Developer/Landlord) and the referring physicians occupying the medical office

buildings." (Doc. 32 ¶ 3) Specifically, on January 27, 2005, BayCare leased land at

St. Anthony's Hospital to St. Pete MOB, LLC, and agreed that St. Pete MOB would

build a medical office building (the Heart Center). To satisfy "zoning and other

governmental requirements," the lease grants a non-exclusive parking easement to

St. Pete MOB. (Doc. 32 ¶¶ 71, 73) Due to the parking easement, St. Pete MOB

incurred neither "the expense of leasing additional land" for a garage "nor the

$3.6 million cost of constructing the required 240 parking spaces[] nor the costs of

garage maintenance, insurance and taxes." (Doc. 32 ¶ 74) "One purpose of

Baycare's arrangement was to have St. Pete MOB pass some or all of the millions of

dollars in savings to physician tenants to encourage them to make or increase

referrals." (Doc. 32 ¶¶ 74, 81) Further, in 2013, the lease was amended to allow "referring physicians, their staff and their patients, to use Baycare's parking facilities at no charge," which resulted in an estimated "*annual* parking benefit per referring physician" of more than $10,000. (Doc. 32 ¶¶ 79, 81) St. Pete MOB "executed the easement," and the easement "was not signed by any of the referring physicians who benefit from it." (Doc. 32 ¶ 77)

Also, BayCare provides a rent concession to the referring physicians at the Heart Center by claiming a tax exemption for non-exempt property and annually saves St. Pete MOB about $140,000 in real property taxes. (Doc. 32 ¶¶ 87, 92) Similarly, after constructing a second medical office building (the Suncoast Medical Clinic) and leasing the building to SC Physicians, LLC, BayCare in early 2013 "bestowed its valuable tax-exempt status on SC Physicians and its referring physicians." (Doc. 32 ¶¶ 94, 95, 105) This rent concession "eliminated SC Physicians's proportionate share of the $377,855 ad valorem real property tax liability as well as its $38,341 2013 personal property tax liability." (Doc. 32 ¶ 105)

Finally, BayCare paid "Other Remuneration," including "valet services on the St. Anthony's Hospital campus," to the referring physicians at the Heart Center and the Suncoast Medical Center. (Doc. 32 ¶ 108)

## 2. Violations of the False Claims Act

BayCare "violated the False Claims Act by submitting claims for payment to Medicare, Florida Medicaid, and other federally-sponsored health care programs for

services provided to patients referred unlawfully." (Doc. 32 ¶ 4)  In other words, violations of the Stark Statute and Anti-kickback Statute allegedly "tainted" each claim submitted as a result of unlawful referrals.  (Doc. 32 ¶¶ 184, 192)

BayCare "knowingly" certified compliance with the Stark Statute and the Anti-kickback Statute by signing a "Medicare Provider Application and Agreement as well as hospital cost reports." (Doc. 32 ¶ 152)  Also, BayCare "presented or caused to be presented Medicare and Medicaid claims based on referrals from physician-tenants." (Doc. 32 ¶ 137)  To support this allegation, the complaint provides financial information reported by BayCare in 2013 for inpatient (as well as some outpatient) Medicare claims and charges.  (Doc. 32 ¶¶ 114, 115)  Also, the complaint lists the names of referring physicians at the Heart Center and the Suncoast Medical Clinic along with the aggregate number of Medicare patients each physician referred to St. Anthony's from 2009 to 2011.  (Doc. 32 ¶¶ 114, 115, 118)  Thus, BayCare "billed the government" and the government "paid for claims based on referrals from tenant physicians who received remuneration from BayCare, at least in part, for these referrals." (Doc. 32 ¶ 138)

The relator's suit against BayCare comprises three counts.  Counts I and II allege that violations of the Anti-kickback Statute (Count I) and violations of the Stark Statute (Count II) "tainted" claims submitted to the government.  (Doc. 32 ¶¶ 184, 192)  Specifically, Counts I and II each allege that, "[f]rom at least January 2005, Defendant presented or caused to be presented false or fraudulent claims to the

United States for payment or approval" and that, "[f]rom January 2005, Defendant knowingly made, used or caused to be made or used, false records or statements that were material to false or fraudulent claims for payment . . . by the United States." (Doc. 32 ¶¶ 183, 188, 191, 196)  Count III alleges that the same actions underlying Counts I and II create liability under the Florida False Claims Act.  BayCare moves (Doc. 37) to dismiss and argues that the relator fails to comply with Rule 9(b)'s particularity requirement and fails to state a claim under Rule 12(b)(6).

## DISCUSSION

Under *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301 (11th Cir. 2002), a False Claims Act complaint must comply with Rule 9(b)'s particularity requirement.  The requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).  BayCare argues that the relator "failed to allege the circumstances of the alleged fraud with particularity, including a failure to identify a single allegedly false statement, record or claim that was made or submitted to or paid by any government entity as a result of the schemes Relator has devised based on what appears to be little more than his review of a publicly recorded summary of a ground lease."  (Doc. 37 at 4)  Thus, this order addresses (1) the sufficiency of the relator's allegations that

BayCare violated the False Claims Act and (2) to the extent that BayCare asserts this argument, the sufficiency of the relator's allegations that BayCare violated the Stark Statute and the Anti-kickback Statute.

## 1. The sufficiency of the relator's allegations that BayCare violated the False Claims Act

BayCare argues that the complaint fails to satisfy Rule 9(b) because the relator "does not allege one single illegally-referred patient was treated by the Hospital or that a false claim exists or was submitted for that patient's care." (Doc. 37 at 10) However, as the relator correctly responds, unlike the fraud alleged in many actions for violations of the False Claims Act, the fraud alleged in this action "does not depend as much on the particularized billing content of any given claim." (Doc. 38 at 7) According to the relator, "improper relationships with referring physicians taint[] *every* claim submitted as a result of those referrals." (Doc. 38 at 8) Thus, the relator argues that the "circumstances constituting fraud" in this action "relate[] to the provision of kickbacks . . . and entry into financial relationships . . . by virtue of [BayCare's] parking and tax schemes" and that the relator has pleaded those circumstances "with more than adequate specificity." (Doc. 38 at 8)

Under *Clausen,* 290 F.3d at 1311, the submission of a false claim to the government for payment is "the *sine qua non* of a False Claims Act violation." However, "Rule 9(b) exists to prevent spurious charges and provide notice to defendants of their alleged misconduct, not to require plaintiffs to meet a summary

judgment standard before proceeding to discovery." *U.S. ex rel. Kunz v. Halifax Hosp. Med. Ctr.*, 2011 WL 2269968, at *8 (M.D. Fla. June 6, 2011) (Persnell, J.).  Thus, "there is no *per se* rule that a[ False Claims Act] complaint must provide exact billing data or attach a representative sample claim."  *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006).  Rather, the complaint must provide some "indicia of reliability . . . to support the allegation of *an actual false claim* for payment being made to the Government."  *Clausen,* 290 F.3d at 1311.  Whether a complaint contains sufficient "indicia of reliability" to satisfy Rule 9(b) requires a "case-by-case" determination.  *Atkins*, 470 F.3d at 1358.  "At a minimum, a plaintiff-relator must explain the basis for [the] assertion that fraudulent claims were actually submitted." *Mastej*, 591 Fed. Appx. at 704.

After alleging violations of the Stark Statute and the Anti-kickback Statute, the relator relies on information from the Centers for Medicare & Medicaid Services to allege that BayCare submitted claims for unlawfully referred Medicare patients. Specifically, the relator alleges for representative years (1) BayCare's revenue from inpatient (and some outpatient) Medicare claims and (2) the names of referring physicians at the Heart Center and the Suncoast Medical Clinic along with each physician's aggregate number of Medicare patient referrals to St. Anthony's Hospital. *Cf. United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, *6 (S.D. Fla. July 12, 2012) (Huck, J.) (finding sufficient "indicia of reliability" that

claims for payment were submitted where the relator relied on the defendant's public filings that showed revenue from Medicare and on an exhibit that contained examples of claims).

Also, the relator (1) alleges that BayCare "knowingly" certified compliance with the Stark Statute and the Anti-kickback Statute by signing "provider applications and cost reports and submitt[ing] them to the U.S. Government" and (2) identifies statements contained in those submissions.  (Doc. 32 ¶ 152); *Cf. United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2013 WL 1289260, at *3 (S.D. Fla. Mar. 27, 2013) (Huck, J.) ("The Court holds that the representations Tenet made in its Medicare Provider Application and Agreement as well as the hospital cost reports are enough to ground a claim under the False Claims Act.").  Thus, rather than rely on speculation, the relator provides sufficient "indicia of reliability" that BayCare submitted claims to the government for payment.

## 2. The sufficiency of the relator's allegations that BayCare violated the Stark Statute and the Anti-kickback Statute

The relator alleges that the claims BayCare submitted to the government for reimbursement were false because BayCare violated the Stark Statute and the Anti-kickback Statute.  To plead a violation of the Stark Statute, 42 U.S.C. § 1395nn(a)(1), the relator must allege (1) a "financial relationship" between BayCare and a physician, (2) a referral from the physician to BayCare for "designated health services," and (3) a claim "present[ed] or caus[ed] to be presented" by BayCare to an

entity for "designated health services furnished pursuant to a referral." As earlier discussed, the relator provides "indicia of reliability" that physicians at the Heart Center and the Suncoast Medical Clinic referred Medicare patients to BayCare and that BayCare submitted claims to the government for those referrals. The complaint alleges that the referrals "include 'designated health services.'" Under Section 1395nn(h)(6), "designated health services" include "[i]npatient and outpatient hospital services."

The relator alleges that "BayCare had both direct and indirect compensation arrangements with the referring physicians" and that those compensation arrangements constitute prohibited financial relationships under the Stark Statute. (Doc. 32 ¶ 139) Specifically, the relator alleges that BayCare provided the referring physicians with free parking,[5] rent concessions, and valet services. The relator complies with Rule 9(b) by alleging "facts as to time, place, and substance" of the compensation arrangements. *Clausen*, 290 F.3d at 1310. Also, to demonstrate that the free parking, the rent concessions, and the valet services each constitute remuneration, the relator calculates the fair market value. Thus, the relator pleads a violation of the Stark Statute.

---

[5] The relator states that the "arrangement whereby physicians receive free parking for themselves, their staff and their patients, as well as free maintenance, constitutes direct and indirect compensation arrangements between BayCare and referring physicians." (Doc. 32 ¶ 81) To support the allegation of an indirect compensation arrangement, the relator alleges that the "value of the easement" "varies with," "takes into account," or "otherwise reflects" the volume of referrals "because larger practices with more patients can be expected to use more parking and other easement facilities than smaller practices with fewer patients." (Doc. 32 ¶¶ 141, 143–45)

To plead a violation of the Anti-kickback Statute, the relator must allege that (1) BayCare knowingly and willfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services that may be paid by a federal health care program.  *See* 42 U.S.C. § 1320a-7b(b)(2).  As discussed, the relator alleges that BayCare paid remuneration, including free parking, rent concessions, and valet services, to physicians at the Heart Center and the Suncoast Medical Clinic.  Also, the relator alleges that BayCare paid the remuneration"knowingly and willfully" because BayCare certified compliance with the Anti-kickback Statute by signing "provider applications and cost reports."  (Doc. 32 ¶ 152); *see United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998) (stating that a relator pleads remuneration was paid "knowingly and willfully" if the relator alleges that a defendant acted "with knowledge that his conduct was unlawful").

Finally, the relator alleges that BayCare paid remuneration to physicians "for the purpose of inducing or rewarding referrals of items and services to be paid for by federal and state healthcare programs."  Although the Anti-kickback Statute fails to define the term "induce," "[c]ase law . . . consistently treats the [Anti-kickback Statute's] inducement element as an *intent* requirement."  *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013) (Coasta, J.); *see also United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000) (Murphy, J.) ("[A] person who offers or pays remuneration to another person violates the [Anti-kickback Statute] so long as one purpose of the offer or payment is to induce Medicare or

Medicaid patient referrals."); *United States ex rel. Schaengold v. Mem'l Health, Inc.*, 2014 WL 7272598, at *13 (S.D. Ga. Dec. 18, 2014) (Edenfield, J.) (finding that a relator "sufficiently pleaded a violation" of the Anti-kickback Statute when the relator alleged that the defendant "made kickbacks with the intent of inducing referrals"). Thus, the relator has pleaded a violation of the Anti-kickback Statute.

## CONCLUSION

Accordingly, BayCare's motion (Doc. 37) to dismiss is **DENIED**.

ORDERED in Tampa, Florida, on August 14, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 14 -