UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS BINGHAM,

    Plaintiff,

v.                                                    Case No: 8:14-cv-73-T-23JSS

BAYCARE HEALTH SYSTEM,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTIONS TO COMPEL

THIS MATTER is before the Court on Plaintiff's Motion to Compel West Florida Cardiology Network, LLC to Produce Documents Responsive to Non-Party Subpoena (Dkt. 122), Motion to Compel Production of Documents (Dkt. 123), and Second Motion to Compel Production of Documents (Dkt. 126).

### BACKGROUND

Defendant, BayCare Health System, is a Florida non-profit corporation that owns St. Anthony's Hospital, Inc. and St. Anthony's Professional Buildings and Services, Inc. (Dkt. 32, ¶ 17; Dkt. 54.) In the Amended Complaint, Plaintiff alleges that Defendant inaccurately claimed tax-exempt status for the Heart Center Medical Office Building ("Heart Center MOB"), which is located on the St. Anthony's Hospital campus, and passed kickbacks and financial benefits in the form of free parking and tax-exempt status to physician tenants of the Heart Center MOB. (Dkt. 32, ¶¶ 68–93.)

Presently, Plaintiff moves to compel the production of documents from non-party West Florida Cardiology Network, LLC ("WFC") in response to a subpoena issued on WFC. (Dkt.

122.) Additionally, Plaintiff moves to compel the production of documents from Defendant in response to Plaintiff's Requests for Production. (Dkts. 123, 126.)

## APPLICABLE STANDARDS

Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In determining proportionality, the court considers several factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

Although the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). Under Federal Rule of Civil Procedure 26, the court must, on motion or on its own, limit the extent of discovery otherwise allowed if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). Further, the court must limit discovery if it determines that the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Fed. R. Civ. P. 26(b)(2)(C)(ii).

## ANALYSIS

### Motion to Compel: West Florida Cardiology Network, LLC

Plaintiff seeks to compel the production of documents from non-party WFC in response to a subpoena issued on WFC. WFC is a physician tenant of the Heart Center MOB, which is owned

and operated by St. Pete MOB, LLC. (Dkt. 131.) On May 12, 2016, Plaintiff served a subpoena on WFC requesting documents relating to WFC's tenancy in the Heart Center MOB. (Dkt. 122.) In response, WFC contends that the information sought in the subpoena is duplicative and cumulative, as the information requested has already been provided to Plaintiff by other sources. (Dkt. 130.) Requests 1 through 4 in the subpoena issued to WFC seek the following:

> Request 1: All real estate leasing and rental agreements, including any amendments, addendums and modifications to any such agreements, between [WFC] and St. Pete MOB, LLC, for [the Heart Center MOB].
>
> Request 2: Any receipts, canceled checks, operating expense statements, budget statements, annual statements and reconciliations or any other form of documents showing that [WFC] was charged or paid any portion of the real estate taxes, ad valorem taxes and/or property taxes for the years 2006 through 2015 for [the Heart Center MOB].
>
> Request 3: Any receipts, canceled checks, operating expense statements, budget statements, annual statements and reconciliations or any other form of document showing that [WFC] was reimbursed, repaid, credited or rebated for any amounts previously withheld or paid for real estate, ad valorem and/or property taxes for the years 2006 through 2015 for [the Heart Center MOB].
>
> Request 4: Any correspondence between [WFC] and St. Pete MOB, LLC, and/or Charles River Properties, LLC, regarding real estate taxes, ad valorem taxes and property taxes for [the Heart Center MOB].

(Dkt. 130-1.)

Through discovery, Plaintiff has obtained the information he seeks from another source. Specifically, the information sought in Requests 1 through 4 of the WFC subpoena were obtained by Plaintiff through non-party Optimal Outcomes, LLC, defined in the subpoena to include St. Pete MOB, LLC as an affiliated entity.[1] (Dkt. 130-9.) For example, the subpoena issued to Optimal Outcomes sought the following information:

---

[1] In the subpoena issued to Optimal Outcomes, Plaintiff defines Optimal Outcomes as an affiliated entity of St. Pete MOB, LLC. Specifically, Plaintiff's definition provides that Optimal Outcomes "refers to Optimal Outcomes, LLC, . . . and other persons or entities acting on its behalf or under its control, including (if applicable) . . . St. Pete MOB, LLC." (Dkt. 130-9.) Similarly, Plaintiff's definition of St. Pete MOB, LLC provides that St. Pete MOB, LLC "refers

> Request 4: All agreements of any kind, including rental and leasing agreements and cash flow participation agreements, ownership interest and/or equity interest agreements, between Optimal Outcomes, LLC (including any entity owned or controlled by Optimal Outcomes, LLC, and/or Optimal Management and/or St. Pete MOB, LLC) and any tenant, subtenant, occupant, licensee, sub-lessor, lessee and sub-lessee of the Heart Center MOB.
>
> Request 10: All documents relating to the calculation or determination of any charges additional to rent, or benefits, as to tenants of the Heart Center MOB, including determination and allocation of common area maintenance charges, determination and allocation of common area janitorial services, determination of access rights to common areas, and allocation of insurance and taxes to the tenants.
>
> Request 11: Any document relating to parking rights, parking passes, parking stickers, parking applications, parking vouchers, parking services, or valet services provided to any tenant, subtenant, occupant, licensee, sub-lessor, lessee and sub-lessee of the Heart Center MOB.

(Dkt. 130-9.) Requests 1 through 4 of the WFC subpoena are duplicative of these requests in that they seek documents concerning WFC's tenancy and tax payments for the Heart Center MOB, and documents obtained from Optimal Outcomes related to "any tenant" of the Heart Center MOB include WFC. (Dkt. 130-1.)

Additionally, in Requests 5 and 6, Plaintiff seeks information from WFC for which he had ample opportunity to request from Defendant and which were already provided by Defendant in response to Plaintiff's requests for production. Specifically, Request 5 seeks the following:

> Any correspondence between [WFC] and St. Anthony's Hospital, St. Anthony's Professional Buildings and Services and/or BayCare Health Systems regarding real estate taxes, ad valorem taxes and/or property taxes for [the Heart Center MOB].

(Dkt. 130-1.) This document request is duplicative of the following requests served on Defendant in Plaintiff's First and Third Sets of Requests for Production:

> Request 1: All documents governing or relating to the relationship between Defendant . . . and any person or entity leasing space on the St. Anthony's hospital campus at 560 Jackson including but not limited to St. Pete MOB LLC, Optimal Outcomes, LLC, Optimal Asset Management, and their affiliates.

---

to St. Pete MOB, LLC, and . . . other persons or entities acting on its behalf or under its control, including (if applicable) Optimal Outcomes, LLC." (Dkt. 130-9.)

- 4 -

>Request 25: All documents that show the amount of ad valorem taxes and non-valorem assessments that were paid by [BayCare] or any other person or entity to any tax authority for any portions of the Heart Center MOB and the Suncoast MOB for the years 2005 to the present.
>
>Request 26: All documents that show the amount of ad valorem taxes and non-ad valorem assessments that were paid to [BayCare] by any person or entity to pay to any tax authority for any portions of the Heart Center MOB and the Suncoast MOB for the years 2005 to the present.

(Dkt. 130-10, 130-11.)  As indicated by WFC, and by Defendant in its responses and objections to Plaintiff's First and Third Sets of Requests for Production, Defendant has produced the documents responsive to these requests, namely documents concerning ad valorem taxes.  (Dkt. 130 at 12–13; Dkt. 130-11.)  *See Bradfield v. Mid-Continent Cas. Co.*, No. 5:13-CV-222-OC-10PRL, 2014 WL 4626864, at *4 (M.D. Fla. Sept. 15, 2014) (finding that the discovery sought was cumulative or duplicative when it had been obtained from other sources).

>Similarly, Request 6 seeks the following:
>
>All leasing, time-share and rental agreements, including any amendments, addendums and modifications to any such agreements, for the use of any medical equipment, laboratory space, laboratory equipment, diagnostic lab, radiology lab, catheterization lab and ambulatory surgical center between [WFC] and St. Pete MOB, LLC, St. Anthony's Hospital, St. Anthony's Professional Buildings and Services and/or BayCare Health Systems for [the Heart Center MOB].

(Dkt. 130-1.)  This document request is duplicative of Plaintiff's Second Request for Production served on Defendant seeking:

>Request 11: All subleases and agreements of any kind between [BayCare] as tenant/lessee/sublessor of any space in the Heart Center MOB and any person, investment company, business entity, partnership, corporation, medical group, medical practice, physician or medical clinic, as subtenant/sublessee of any space in the Heart Center MOB, including all subsequent modifications and amendments.
>
>Request 16: All documents that memorialize, constitute, show, demonstrate or analyze any agreement of any kind between [BayCare] and any owner, tenant, subtenant, lessor, lessee or business occupant of any kind of the Heart Center MOB.

(Dkt. 130-12.) As indicated by Defendant's responses and objections to Plaintiff's Second Request for Production, Defendant has produced the responsive documents, namely agreements between BayCare and subtenants or sublessees of the Heart Center MOB. (Dkt. 130-12.)

Although the discovery rules do not expressly limit the sources from whom discovery may be sought, the rules provide that discovery must be proportional to the needs of the case—which includes consideration of, among other things, the burden or expense of the proposed discovery—and must be limited if the discovery sought is unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b). Because the discovery requested appears unreasonably cumulative and would subject non-party WFC to undue burden, the discovery should be limited. *See* Fed. R. Civ. P. 26(c)(1) (providing that the court may limit discovery to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense); *Klay v. All Defendants*, 425 F.3d 977, 984 (11th Cir. 2005) (providing that the court must protect non-parties from significant expense); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1558–59 (11th Cir. 1985) (providing that Rule 26 authorizes a court to limit discovery where the party seeking discovery has had ample opportunity to obtain the sought-after information); *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *2 (M.D. Fla. June 6, 2006) (finding that, "in an effort to spare third parties the expense and cost of responding to the subpoenas," a party ought to first attempt to obtain such evidence directly from the opposing party). Therefore, Plaintiff's Motion to Compel as to WFC is denied.

## Motion to Compel: BayCare

In Plaintiff's Motion to Compel Production of Documents, Plaintiff moves to compel Defendant to produce documents in response to Requests for Production 51, 52, 53, 67, 68, 70, 73,

and 78. (Dkt. 123.) In response, Defendant argues that the requests are unduly burdensome and seek irrelevant information. (Dkts. 129, 131.)

Request 51 seeks all requests for written consent to enter into lease agreements with prospective tenants of the Heart Center MOB under the Ground Lease, which provides that St. Pete MOB, LLC must seek the approval of St. Anthony's before leasing space in the Heart Center MOB to anyone other than St. Anthony's. To the extent that this request seeks documents involving physician groups not located in the Heart Center MOB, such a request is beyond the scope of the allegations in the Amended Complaint and is thus irrelevant. Therefore, Defendant is directed to supplement its response to this request with the written consents of physician tenants of the Heart Center MOB.

Requests 52, 53, and 78 seek documents relating to valet and parking services provided by Defendant to the Heart Center MOB. Specifically, Requests 52 and 53 seek documents showing the costs incurred by Defendant since January 1, 2006, in maintaining the parking areas and in providing valet services used by tenants and invitees of the Heart Center MOB. Request 78 seeks all documents showing the payments made by Defendant to any business or person for valet parking services provided by the Heart Center MOB. Upon consideration, the Court finds that the information requested is relevant to the extent it shows the value of services in the form of parking and valet services provided by Defendant to tenants of the Heart Center MOB. However, as noted by Defendant, a request for "all documents that show costs" or "all documents showing the payments made" is overly broad, and the term "maintaining" as used in Request 52 is improperly vague. Therefore, Defendant is directed to supplement its responses to Requests 53 and 78 to provide invoices, bills, and claims for payment submitted to BayCare for the provision of valet services to tenants of the Heart Center MOB since January 1, 2008.

Requests 67 and 73 seek lease agreements. Specifically, Request 67 seeks a lease agreement between Defendant and the Heart and Vascular Institute of Florida, LLC ("HVIF"), a tenant of the Heart Center MOB. However, this request does not relate to Plaintiff's allegations against Defendant regarding parking and property taxes, as Plaintiff states that it relates to "illegal remuneration to the HVIF referring physicians, separate and apart from the free parking, valet services, and tax exempt status of the building." (Dkt. 123 at 14.) Therefore, the motion to compel as to this request is denied. Request 73 seeks a lease agreement between St. Anthony's and St. Pete MOB referenced in a deposition. Defendant contends that it was unable to locate a copy of the agreement sought by Request 73 and will serve a supplemental response to the request. (Dkt. 131.) Therefore, Defendant is directed to supplement its response to Request 73.

Request 68 seeks all advertising and marketing materials used to advertise any cardiac care facilities at St. Anthony's Hospital between 2004 and the present. Plaintiff argues that "[a]dvertising for the Cardiac Care Center at the St. Anthony's Hospital, is relevant to show BayCare's purpose to increase referrals to the hospital for the highly specialized area of cardiology, which can regularly require extended inpatient treatment such as for open heart surgery." (Dkt. 123 at 17.) However, this request is overly broad in that it requests information concerning all cardiac care facilities, rather than only those related to the Heart Center MOB. Additionally, Defendant indicates that it has produced documents related to advertisements of the Heart Center MOB. (Dkt. 131.) Therefore, the motion to compel as to this request is denied.

Request 70 seeks copies of all applications submitted by Defendant to the Florida Agency for Health Care Administration since 2001 for a certificate of need approving open-heart surgery and other cardiac procedures at St. Anthony's Hospital. According to Plaintiff, the certificates of need are relevant to show "St. Anthony's efforts to expand their revenues and high priced referrals

in the fruitful area of cardiology at the hospital" to "lure" cardiology groups to the St. Anthony's campus, as the certificates of need require the applicant to state the purpose of the requested facility. (Dkt. 123 at 18.) However, Plaintiff fails to meet his burden of showing how the regulatory approval for the provision of cardiac services is relevant to the claims alleged in the Amended Complaint. Further, the request is not narrowly tailored to the relevant time alleged in the Amended Complaint, as it requests information outside the time surrounding the construction of the Heart Center MOB. Therefore, the motion to compel as to this request is denied.

In his Second Motion to Compel Production of Documents, Plaintiff moves to compel Defendant to produce documents in response to Requests for Production 88 and 89 in Plaintiff's Tenth Request for Production. (Dkt. 126.) Requests 88 and 89 seek documents relating to valet and parking services provided by Defendant to the Heart Center MOB. As noted by Defendant in its objection, Request 88 requests all documents that show the costs incurred by Defendant in maintaining the parking areas used by the tenants of the Heart Center MOB and is thus duplicative of Request 52. However, Request 88 provides a definition of the term "maintaining," which was undefined in Request 52. Therefore, Defendant is directed to supplement its response to Request 88 to provide invoices, bills, and claims for payment submitted to BayCare for maintaining the parking areas used by tenants of the Heart Center MOB since January 1, 2008, which includes "painting, paving, resurfacing, signing, providing security for, cleaning, providing janitorial services for, refuse removal, elevator repairs or maintenance, maintenance of the building structures, paying taxes on the land and/or structures containing said parking areas." (Dkt. 126 at 3.) Similarly, Request 89 requests all documents that show the costs incurred by Defendant in providing valet services for tenants of the Heart Center MOB and is thus duplicative of Request

53. As this request has been addressed above, Plaintiff's second motion to compel is denied as to this request. Accordingly, it is

**ORDERED**:

1. Plaintiff's Motion to Compel West Florida Cardiology Network, LLC to Produce Documents Responsive to Non-Party Subpoena (Dkt. 122) is **DENIED**.

2. Plaintiff's Motion to Compel Production of Documents (Dkt. 123) is **GRANTED** in part and **DENIED** in part. Defendant is directed to supplement its responses to Requests 51, 53, 73, and 78 as stated above by September 2, 2016.

3. Plaintiff's Second Motion to Compel Production of Documents (Dkt. 126) is **GRANTED** in part and **DENIED** in part. Defendant is directed to supplement its response to Request 88 as stated above by September 2, 2016.

**DONE** and **ORDERED** in Tampa, Florida, on August 24, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record