UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS BINGHAM,

    Plaintiff,

v.                                                                                                  Case No: 8:14-cv-73-T-23JSS

BAYCARE HEALTH SYSTEM,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Motion for Partial Summary Judgment on Liability (Dkt. 155) and Defendant's Motion for Summary Judgment, (Dkt. 156), which were referred to the undersigned for a report and recommendation. (Dkt. 179.) Plaintiff, relator Thomas Bingham, sued Defendant, BayCare Health System ("BayCare"), alleging violations of the Stark Law, 42 U.S.C. § 1395nn, the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, and the False Claims Act, 31 U.S.C. §§ 3729–3733. Plaintiff moves for partial summary judgment on his claim that BayCare violated the Stark Law by providing parking and tax savings at no charge to physicians working in medical office buildings affiliated with BayCare. BayCare moves for summary judgment on all of Plaintiff's claims. Because there is insufficient evidence to show that the physicians were provided free parking and tax savings or that BayCare provided these benefits for the purpose of inducing referrals, it is recommended that Plaintiff's Motion for Partial Summary Judgment be denied, and Defendant's Motion for Summary Judgment be granted.

## BACKGROUND

Defendant, BayCare Health System, is a Florida non-profit corporation that operates St. Anthony's Hospital.[1] In 2004, BayCare entered into a Ground Lease with St. Pete MOB, LLC ("St. Pete MOB"), a third-party commercial real estate developer, to construct a medical office building on the St. Anthony's Hospital campus: the Heart Center Medical Office Building ("Heart Center MOB"). The Ground Lease was amended in 2005 and 2012. The Heart Center MOB was constructed in 2006 and, until 2016, was classified as tax-exempt by the Pinellas County Property Appraiser.

The Heart Center MOB is occupied by tenants St. Anthony's Primary Care, LLC ("SA Primary Care") and West Florida Cardiology Network, LLC ("WFC"), who employ physicians practicing at the Heart Center MOB. In 2013, BayCare opened another medical office building on the St. Anthony's Hospital campus: the Suncoast Medical Office Building ("Suncoast MOB"). The Suncoast MOB is occupied by tenant SC Physicians, LLC ("SC Physicians"), who employs physicians practicing at the Suncoast MOB. The Suncoast MOB is classified as tax-exempt by the Pinellas County Property Appraiser based on a charitable-purpose tax exemption. BayCare, through its contract with Healthcare Parking Systems of America, Inc., provides valet parking services at the Heart Center MOB and the Suncoast MOB.

Plaintiff, qui tam relator Thomas Bingham, is a certified real estate appraiser in Tennessee, unaffiliated with BayCare. He alleges in the First Amended Complaint that BayCare violated the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, and the Stark Law, 42 U.S.C. § 1395nn, by providing free parking, valet services, and tax benefits to the physicians at the Heart Center MOB and the Suncoast MOB to induce the physicians to refer patients to BayCare. (Dkt. 32.) He further

---

[1] BayCare is affiliated with St. Anthony's Hospital, Inc. and St. Anthony's Professional Buildings and Services, Inc., which are both Florida non-profit corporations and, along with BayCare, are referred to collectively as "BayCare."

alleges that BayCare submitted false claims to Medicare and Medicaid for services provided to patients unlawfully referred to BayCare, in violation of the False Claims Act, 31 U.S.C. §§ 3729–3733.  (Dkt. 32.)  Plaintiff's suit against BayCare comprises three counts: violations of the Anti-Kickback Statute (Count I), violations of the Stark Law (Count II), and liability under the False Claims Act (Count III) based on the actions underlying Counts I and II.  Plaintiff's suit is premised on the central allegation that BayCare provided the following remuneration to the physicians at the Heart Center MOB and/or the Suncoast MOB to induce patient referrals: (1) parking rights, which allowed the physicians, their staff, and their patients to use parking facilities at no charge; (2) valet parking services, which were paid by BayCare and provided to the physicians, their staff, and patients; and (3) tax savings, which allowed the physicians to benefit from BayCare's tax exemption.

## APPLICABLE STANDARDS

Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A disputed fact is material if the fact "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  The movant bears the burden of establishing the absence of a dispute over a material fact.  *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).  In considering a summary judgment motion, all evidence is viewed in the light most favorable to the non-movant.  *Id.*  Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the

moving party requests summary judgment on the absence of necessary evidence, the non-moving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

## ANALYSIS

Plaintiff contends BayCare violated both the Anti-Kickback Statute and the Stark Law by offering remuneration to physicians working at the Heart Center MOB and the Suncoast MOB in exchange for referrals to BayCare. Plaintiff relies on those alleged violations to form the basis of his claim that BayCare also violated the False Claims Act. The False Claims Act, 31 U.S.C. §§ 3729–3733, "is the primary law on which the federal government relies to recover losses caused by fraud." *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Under 31 U.S.C. § 3729(a)(1) and (a)(2), the False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[2] 31 U.S.C. § 3729(a)(1). A person acts "knowingly" if he or she: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

A violation of either the Stark Law or the Anti-Kickback Statute can form the basis of liability under the False Claims Act. (Dkt. 54 at 2–3.) With some distinct differences, both the Anti-Kickback Statute and the Stark Law forbid hospitals from offering any "remuneration" to a

---

[2] The Florida False Claims Act, §§ 68.081–68.092, Fla. Stat., mirrors the federal False Claims Act. *United States v. All Children's Health Sys., Inc.*, No. 8:11-CV-01687-T-27, 2013 WL 6054803, at *5 (M.D. Fla. Nov. 15, 2013).

physician in exchange for referrals if payment for the referred services can be made under a federal health care program. *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 521 (11th Cir. 2015).

### A. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on his claim that BayCare had a direct compensation arrangement with referring physicians practicing at the Heart Center MOB, which constitutes a prohibited financial relationship under the Stark Law. Specifically, Plaintiff argues that BayCare provided "direct in-kind remuneration to referring physicians in the form of a valuable parking easement and valet services, without charge." (Dkt. 155 at 1.)

The Stark Law, 42 U.S.C. § 1395nn, "prohibits doctors from referring Medicare patients to a hospital if those doctors have certain specified types of 'financial relationships' with that hospital" and "prohibits that same hospital from presenting claims for payment to Medicare for any medical services it rendered to such referred patients." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014). Thus, the Stark Law prohibits a physician from referring Medicare or Medicaid patients to a hospital with which the physician has a financial relationship. A "financial relationship," which includes a direct or indirect "compensation arrangement," encompasses any arrangement involving remuneration between a physician and a hospital. 42 U.S.C. § 1395nn(a)(2)(B), (h)(1)(A); 42 C.F.R. § 411.354(a)(1)(ii). "Remuneration" is "any payment or benefit, made directly or indirectly, overtly or covertly, in cash or in kind." 42 C.F.R. § 411.351. To succeed on a claim under the Stark Law, a plaintiff must prove the following: (1) a "financial relationship" between the hospital and a physician; (2) a referral from the physician to the hospital for "designated health services"; and (3) a claim "present[ed] or caus[ed] to be presented" by the hospital to an entity for "designated health services furnished pursuant to a referral." 42 U.S.C. § 1395nn(a)(1).

Under the Stark Law, "[a] direct compensation arrangement exists if remuneration passes between the referring physician . . . and the [hospital] without any intervening persons or entities." 42 C.F.R. § 411.354(c)(1)(i). Therefore, in a direct compensation arrangement, remuneration passes directly between the referring physician and the hospital. BayCare argues that Plaintiff has failed to establish the existence of a direct compensation arrangement between BayCare and the referring physicians at the Heart Center MOB. As such, BayCare argues that Plaintiff has failed to establish the existence of a financial relationship between BayCare and the referring physicians, as required under the Stark Law.

According to Plaintiff, BayCare granted free parking directly to physicians who were making patient referrals to St. Anthony's Hospital, thus creating a direct financial relationship between BayCare and the referring physicians. (Dkt. 155 at 16.) Plaintiff cites to the Ground Lease to support his contention that "[t]he Ground Lease granted a direct easement for on-campus parking to subtenants (physicians) and their invitees (patients) as grantees." (Dkt. 155 at 2.) But, as expressed in the Ground Lease, the parking easement confers parking rights to "Tenant and Tenant's subtenants and invitees" (i.e., to St. Pete MOB, its subtenants, and its invitees)—not the referring physicians themselves. (Dkt. 155, Ex. 6, art. 17 § 1.) The Ground Lease identifies BayCare as "Landlord," and St. Pete MOB as "Tenant." (Dkt. 166, Ex. 6 at 1.) The Amended and Restated Ground Lease includes identical language. (Dkt. 155, Ex. 12.)

St. Pete MOB's subtenants are the tenants of the Heart Center MOB, which include SA Primary Care and WFC. (Dkt. 150, 74:5–13.) The tenants and referring physicians are not parties to the Ground Lease, and the tenants (such as WFC and SA Primary Care) have separate office leases with St. Pete MOB through which parking rights are conferred. (Dkt. 155, Ex. 7 at 2.) Therefore, referring physicians receive the benefit of parking through their employers (tenants of

- 6 -

the Heart Center MOB) who, by virtue of their office leases with St. Pete MOB, receive the benefit from St. Pete MOB through its Ground Lease with BayCare. The Ground Lease does not, therefore, provide evidence of a direct compensation arrangement between BayCare and the referring physicians.

Additionally, Plaintiff moves for summary judgment on its claim that BayCare provided valet parking to the physicians at the Heart Center MOB and that the provision of valet parking constitutes a direct compensation arrangement under the Stark Law. (Dkt. 155 at 5.) But Plaintiff fails to cite to any evidence showing that the Heart Center MOB physicians used valet parking. Rather, Plaintiff merely reiterates the undisputed fact that valet parking was offered at the Heart Center MOB through BayCare's contract with Healthcare Parking Systems of America, Inc., and BayCare paid the amounts shown on the invoices for valet services. (Dkt. 155, Ex. 5 at 14–16, Exs. 17–24.) This evidence does not show that the referring physicians were offered valet services or that they used valet services. Nor does not it show that patients who used valet services were referred by physicians at the Heart Center MOB.

Further, under the False Claims Act, a plaintiff must show that the defendant acted "knowingly." Plaintiff argues that BayCare acted with deliberate ignorance or reckless disregard by "fail[ing] to make reasonable inquiries or investigations into the appropriateness of paying for valet services and parking" at the Heart Center MOB. (Dkt. 155 at 7.) To establish this element, Plaintiff cites to the deposition of Carl Tremonti, the chief financial officer of St. Anthony's Hospital. But the seven-page deposition excerpt cited by Plaintiff provides no testimony from Mr. Tremonti regarding an inquiry or suspicion related to parking at the Heart Center MOB. Indeed, the issue of parking never arose in the portion of the deposition cited as an exhibit by Plaintiff.

(Dkt. 155, Ex. 35.)  Therefore, Plaintiff has not provided evidence to show that BayCare acted knowingly, or with reckless disregard or deliberate indifference.

As such, Plaintiff fails to establish the existence of a financial relationship in the form of a direct compensation arrangement between BayCare and the referring physicians, which is the basis of Plaintiff's Motion for Partial Summary Judgment on its Stark Law claim.  Accordingly, it is recommended that Plaintiff's Motion for Partial Summary Judgment be denied.

### B.  Defendant's Motion for Summary Judgment

#### 1. Stark Law

To succeed on a claim under the Stark Law, a plaintiff must first prove the existence of a financial relationship between the hospital and a physician, which can include either a direct compensation arrangement or an indirect compensation arrangement.  42 U.S.C. § 1395nn(a)(1), (a)(2)(B), (h)(1)(A); 42 C.F.R. § 411.354(a)(1)(ii).  As determined above, Plaintiff fails to provide evidence to show the existence of a direct compensation arrangement.

BayCare moves for summary judgment on Plaintiff's claim that BayCare had a financial relationship with referring physicians in the form of an indirect compensation arrangement.  An indirect compensation arrangement exists if: (1) an "unbroken chain" of persons or entities with financial relationships exists between the referring physician and the hospital; (2) the referring physician receives aggregate compensation from the person or entity in the chain with which the physician has a direct financial relationship that "varies with, or takes into account, the volume or value of referrals" generated by the referring physician for the hospital; and (3) the hospital has either "actual knowledge of," or acts in "reckless disregard or deliberate ignorance of," the fact that the referring physician receives the described aggregate compensation.  42 C.F.R. §

411.354(c)(2). BayCare concedes that an unbroken chain of entities exists, therefore establishing the first element of an indirect compensation arrangement. (Dkt. 156 at 8.)

As to the second element of an indirect compensation arrangement, it must be shown that the referring physician receives aggregate compensation from the person or entity in the chain with which the physician has a direct financial relationship, and the aggregate compensation must vary, or take into account, the volume or value of referrals generated by the referring physician for the hospital. 42 C.F.R. § 411.354(c)(2)(i). In this case, the entity in the chain with which the referring physicians have a direct financial relationship is the corporate entity with whom the referring physicians are employed—i.e., their employers, tenants of the Heart Center MOB.[3] Therefore, it must be shown that the aggregate compensation paid to physicians by their employers varies with, or takes into account, the volume or value of referrals generated by the referring physicians for BayCare. But the employment agreements of physicians practicing at the Heart Center MOB show otherwise. For example, the employment agreements of physicians employed by SA Primary Care provide that the physicians' annual compensation is comprised of a base salary and a bonus, neither of which are based on referrals. (Dkt. 156, Ex. 4 at 14–15.) Indeed, the employment agreements expressly provide that the "Physician . . . shall not be compensated in any manner based upon the value or volume of 'designated health services' . . . Physician orders or requests." (Dkt. 156, Ex. 4 at 14–15.)

---

[3] According to WFC's practice administrator, Ina Roberts, WFC has never had, and currently does not have, physician owners. (Dkt. 156, Ex. 2 at ¶ 7.) Similarly, according to former president of St. Anthony's Hospital and current chief administrative officer of BayCare Medical Group, Inc., William G. Ulbricht, no physicians have an ownership interest in SA Primary Care or SC Physicians. (Dkt. 156, Ex. 3 at ¶¶ 4, 9–10.) Plaintiff has not provided evidence to establish the existence of physician-owned tenants at the Heart Center MOB or the Suncoast MOB. Rather, Plaintiff merely cites to the office lease between WFC's predecessor, The Heart and Vascular Institute, wherein Dr. Jeffrey Witt signed as "partner." (Dkt. 155, Ex. 7 at 47.) Therefore, Plaintiff has not shown that the "stand in the shoes" provision of the Stark Law applies. *See* 42 C.F.R. § 411.354(c)(2)(iv) ("[A] physician is deemed to 'stand in the shoes' of his or her physician organization if the physician has an ownership or investment interest in the physician organization."). Nonetheless, Plaintiff fails to provide evidence that Dr. Witt received aggregate compensation from St. Pete MOB in the manner described under the Stark Law.

Similarly, the compensation for physicians employed by SC Physicians is comprised of a base salary and the physician's productivity (using work-relative-value units ("wRVUs")), neither of which are based on referrals. (Dkt. 156, Ex. 5 at 15–18.); (Dkt. 156, Ex. 6 at 17–20.); (Dkt. 156, Ex. 7.) Additionally, the office lease between St. Pete MOB and the tenants of the Heart Center MOB provide that rent is calculated, in part, on the square footage of the leased space, thus imposing a higher rental payment on tenants leasing larger spaces. (Dkt. 156, Ex. 8 at 4 ¶ 3(a).) Plaintiff offers no evidence showing that physicians practicing in the Heart Center MOB or the Suncoast MOB receive compensation—whether it be free parking, rent concessions, or otherwise—from their employers that takes into account the volume or value of referrals.

In his response, Plaintiff merely expresses suspicion, stating: "To consider whether BayCare took into account referrals, query whether BayCare would purchase off-campus land, lease it at $150,000 per year below-market value, spend approximately $500,000 on maintenance and valet, and gratuitously convey easements or the right to free parking to non-referring physicians. A jury would most likely say 'No.'" (Dkt. 169 at 8.) *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). And, as will be discussed below, there is no evidence to show that parking or rent concessions were provided to physicians of the Heart Center MOB or the Suncoast MOB gratuitously or based on referrals. Nor does Plaintiff provide evidence to support his claim that "the provision of valet and shuttle services" by BayCare to "patrons" of the Suncoast MOB constitutes a financial relationship between BayCare and referring physicians. (Dkt. 169 at 16.)

Additionally, even assuming that the second element of an indirect compensation arrangement has been met, Plaintiff offers no evidence to support a conclusion that BayCare acted

- 10 -

in reckless disregard or deliberate ignorance that referring physicians received parking and valet services—the third element required to establish the existence of an indirect compensation arrangement. Indeed, Plaintiff's discussion of this element is confined to the following sentence: "BayCare's scienter can be inferred from its knowledge of the identity of the easement grantees and the contracted scope and extravagant amount paid for for-profit entities' and physicians' valet services." (Dkt. 169 at 9.) This conclusory allegation is insufficient to survive summary judgment. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1302 (11th Cir. 2003) (providing that evidence and theories that would require the jury to engage in speculation and conjecture are insufficient to survive summary judgment). Accordingly, because Plaintiff fails to designate specific facts showing there is a genuine issue for trial concerning the first element of a claim under the Stark Law—the existence of a financial relationship between BayCare and referring physicians—summary judgment is appropriate in BayCare's favor on Plaintiff's Stark Law claims. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) ("[T]he non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved.").

### 2. Anti-Kickback Statute

The Anti-Kickback Statute, 42 U.S.C. § 1320a–7b, prohibits a hospital from financially inducing a person to refer a Medicare patient. 42 U.S.C. § 1320a–7b(b). Under 42 U.S.C. § 1320a-7b(b)(2), the Anti-Kickback Statute imposes criminal liability and penalties on any person who "knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to refer an individual to a person [for medical services] for which payment may be made in whole or in part under a [f]ederal health care program." *Mastej*, 591 F. App'x at 698. Thus,

the Anti-Kickback Statute prohibits the knowing and willful payment of remuneration to induce referrals for services that may be paid by Medicare.  To succeed on a claim under the Anti-Kickback Statute, a plaintiff must prove that the defendant (1) knowingly and willfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services (4) that may be paid by a federal health care program.  *See* 42 U.S.C. § 1320a-7b(b)(2); *Mastej*, 591 F. App'x at 698 (citing *United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013)).  A defendant acts "knowingly and willfully" under the Anti-Kickback Statute if it acts with knowledge that its conduct was unlawful.  *United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998).  The Anti-Kickback Statute broadly defines "remuneration" as "transfers of items or services for free or for other than fair market value."  42 U.S.C. § 1320a–7a(i)(6).  In this case, Plaintiff claims that parking (and related maintenance and repairs), valet parking, and tax savings constitute remuneration under the Anti-Kickback Statute.

### a. Parking

To constitute remuneration, the parking services provided to physicians working in the Heart Center MOB must have been provided "for free or for other than fair market value."  42 U.S.C. § 1320a–7a(i)(6).  Although the Anti-Kickback Statute does not define the term "fair market value," it has been defined as "the price a willing buyer would pay a willing seller . . . when neither is under compulsion to buy or sell."  *Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 678 (N.D. Ill. 2006); *see United States v. Draves*, 103 F.3d 1328, 1332 (7th Cir. 1997) ("The fair market value of property is commonly defined as the price a willing buyer would pay a willing seller for the property, when neither is under compulsion to buy or sell.").  To prove that a defendant offered or paid remuneration, the plaintiff must compare the contracted rates with fair market value.  *Klaczak*, 458 F. Supp. 2d at 679.

According to Patrick Marston, co-owner of St. Pete MOB, parking is not a line-item expense indicated on the statements provided to the tenants of the Heart Center MOB. (Dkt. 148 at 125: 21–126:9.) But, as stated repeatedly by Mr. Marston, parking (and related maintenance and repair) is factored into the leases for each tenant such that the cost of parking and maintenance is calculated into the tenant's rental payments. (Dkt. 148 at 125:21–126:17, 170:3–9, 271:25–272:4, 273:17–21, 275:2–5, 279:10–18, 284:10–12.) Additionally, BayCare's real estate expert, Michael P. Hedden, opines that parking is commonly provided to tenants—without an additional rent charge—as part of the amenities offered, and the rent charged to tenants of the Heart Center MOB is within the fair market value when accounting for parking. (Dkt. 156, Ex. 9 at 3, 25.); (Dkt. 149 at 131:11–25.)

Plaintiff offers no evidence showing either that the tenant's rental payments did not take parking into account or that the rental payments are not within the fair market value. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."); *U.S. ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683, 699 (N.D. Miss. 2012) (entering judgment in favor of the defendant, finding that the government failed to show that the alleged remuneration was not within fair market value).

Similarly, Plaintiff offers no evidence to show that the referring physicians at either the Heart Center MOB or the Suncoast MOB were offered valet services or that they did, in fact, use valet parking. Rather, according to former BayCare regional vice president Ford Kyes, he authorized the provision of valet services as a convenience to "patients and the visitors" to protect their health and safety, and such services were not provided to, or used by, physicians or their staff. (Dkt. 150 at 94:6–95:20.) Further, the invoices for valet parking provided to the Suncoast MOB and the physician agreements cited by Plaintiff do not constitute evidence of an offer by BayCare

to the referring physicians for valet parking, the use of valet parking by the referring physicians, or the use of valet parking by referred patients. (Dkt. 169, Exs. 8, 9, 10, 13, 14, 16.)

Nevertheless, even assuming that parking services were provided free or not within fair market value, there is no evidence to suggest, or prove, that BayCare offered or paid for such services for the purpose of inducing physicians to refer patients to St. Anthony's Hospital. *See Vernon*, 723 at 1256 (providing that the term "willfully," as used in the Anti-Kickback Statute, means that the act was committed "voluntarily and purposely, with the specific intent to do something the law forbids"); *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013) ("Case law . . . consistently treats the [Anti-Kickback Statute's] inducement element as an intent requirement.").

Accepting Plaintiff's argument that a jury need only find that one purpose for providing parking services to referring physicians and their patients was to obtain referrals—as opposed to the sole or primary purpose—Plaintiff cites to no evidence showing that BayCare offered remuneration with the intent to induce referrals. *See United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000) ("[A] person who offers or pays remuneration to another person violates the [Anti-Kickback Statute] so long as one purpose of the offer or payment is to induce Medicare or Medicaid patient referrals."); *see also United States v. LaHue*, 261 F.3d 993, 1006 (10th Cir. 2001) (discussing the plaintiff's evidence regarding inducement, including the parties' negotiations involving the exchange of payment for referrals); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 565 F. Supp. 2d 153, 162 (D.D.C. 2008) (discussing the plaintiff's circumstantial evidence regarding inducement, including detailed fair market value analysis showing that the defendant had paid its medical directors far in excess of the fair market value commensurate with their duties, the defendant's business model built chiefly on census growth, and negotiations focused on patient

referrals); *Klaczak*, 458 F. Supp. 2d at 680 (rejecting the plaintiff's indirect evidence of inducement, noting the lack of a "single comment, email, memo, or other indication" that the defendant knowingly and willfully participated in any kickback scheme).

Indeed, Mr. Marston testified that St. Pete MOB did not provide free or discounted services to physicians or tenants in the Heart Center MOB to induce them to refer patients to BayCare, BayCare did not ask St. Pete MOB to provide free or discounted services to tenants in the Heart Center MOB for the purpose of inducing referrals to BayCare, the tenants of the Heart Center MOB did not ask St. Pete MOB to provide free or discounted services in exchange for making referrals to BayCare, and BayCare did not have any input in the amount of rent charged to tenants by St. Pete MOB. (Dkt. 148 at 272:18–273:16.) Additionally, according to Mr. Kyes, physicians working in the Heart Center MOB could, by virtue of their medical staff privileges, refer patients to BayCare (and other hospitals where the physicians had privileges), but their medical staff privileges did not impose a requirement to refer patients to BayCare. (Dkt. 150 at 29:9–30:14, 41:24–45:5.) Accordingly, Plaintiff has failed to designate specific facts showing there is a genuine issue for trial concerning his claims that parking or valet services constitute remuneration under the Anti-Kickback Statute, or that BayCare offered such services for the purpose of inducing referrals.

### b. Tax Exemption

Plaintiff alleges that BayCare provided a rent concession in the form of tax savings to the referring physicians at the Heart Center MOB by claiming an improper tax exemption, which constitutes remuneration under the Anti-Kickback Statute. (Dkt. 32 at ¶¶ 87, 92–93.) According to correspondence from BayCare to the Pinellas County Property Appraiser's Office, the Heart Center MOB was "inaccurately classified as tax exempt for tax years 2007–[2015]." (Dkt. 169,

Ex. 3 at 1.) Indeed, BayCare admits that the Heart Center MOB was improperly claimed as tax exempt, and correspondence from the Pinellas County Property Appraiser confirms the misclassification. (Dkt. 156 at 17; Dkt. 169, Ex. 4.) But, as shown by the tenant's leases and the testimony of Mr. Marston, the tenants were required to pay taxes under their leases with St. Pete MOB, and the tenants made such payments to St. Pete MOB. (Dkt. 156, Ex. 8 at 5 ¶ (c).); (Dkt. 148 at 24:19–21, 29:3–7, 33:8–21, 246:17–248:3.) Additionally, BayCare "ma[de] payment of past due taxes," and St. Pete MOB "has been collecting [property] taxes from tenants pursuant to the underlying lease agreements between [St. Pete MOB] and the tenants." (Dkt. 169, Ex. 3 at 3.) Moreover, even assuming that the Heart Center MOB tenants did not pay property taxes, no evidence shows that this alleged benefit would be passed to the referring physicians practicing at the Heart Center MOB, or that they were required to pay property taxes.

Additionally, Plaintiff claims that BayCare improperly claimed an ad valorem tax exemption for the Suncoast MOB, which was then bestowed on the referring physicians practicing at the Suncoast MOB. Underlying this claim is Plaintiff's contention that the property appraiser's determination granting a tax exemption was erroneous because the Suncoast MOB was not used for "charitable purposes," as required under Florida law, and BayCare "omitted material information" concerning its non-exempt use of the property. (Dkt. 169 at 12.) *See* §§ 196.012(1), 196.192, 196.196, Fla. Stat. (discussing ad valorem tax exemptions). Plaintiff also raises this issue in his declaration submitted in his response. (Dkt. 169, Ex. 7.)

According to the Pinellas County Property Appraiser's Office, "the exemption on [the Suncoast MOB], both land and building is and was proper for all years." (Dkt. 156, Ex. 11.) The entitlement to a tax exemption is a determination by the county property appraiser, whose assessments of property for ad valorem taxation purposes enjoy a presumption of validity. *See* §

196.193, Fla. Stat. (providing that all applications for exemptions are reviewed by the property appraiser who determines whether, among other things, the applicant uses the property predominantly or exclusively for exempt purposes, and who ultimately determines whether to grant a tax exemption); *Havill v. Scripps Howard Cable Co.*, 742 So. 2d 210, 212 (Fla. 1998) ("A presumption of validity attaches to the property appraiser's assessment of property for ad valorem taxation purposes.").

Plaintiff's argument is aimed at the Pinellas County Property Appraiser and the sufficiency or validity of its determination that the Suncoast MOB is entitled to an ad valorem tax exemption. (Dkt. 169 at 12–15, Exs. 7–11.) But Plaintiff's speculative contention and opinion that the property appraiser incorrectly granted a tax exemption does not create a genuine issue of material fact. *See S.E.C. v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (providing that a party's "[s]peculation or conjecture cannot create a genuine issue of material fact, and a 'mere scintilla of evidence' in support of the nonmoving party cannot overcome a motion for summary judgment."); *Rutland v. State Farm Mut. Auto. Ins. Co.*, 426 F. App'x 771, 775 (11th Cir. 2011) (characterizing the plaintiff's argument that the defendant's calculations of a refund were erroneous as "unsupported and speculative contentions fall[ing] short of creating a genuine issue of material fact"). Further, challenges to the determination of a county official regarding property taxation are not before this Court. *See* § 194.171, Fla. Stat. (conferring jurisdiction on the state circuit courts to hear ad valorem tax assessment contests).

Therefore, Plaintiff fails to designate specific facts showing there is a genuine issue for trial concerning his claims that the Suncoast MOB was improperly claimed as tax-exempt and, therefore, that the tenants of the Suncoast MOB received the benefit of an improper tax exemption. Additionally, there is no evidence to show BayCare's intent—that is, that it offered or paid

remuneration to induce patient referrals—or to show that BayCare acted with knowledge that its conduct was unlawful.

## CONCLUSION

Plaintiff has failed to designate specific facts showing there is a genuine issue for trial concerning the necessary elements under the Stark Law and Anti-Kickback Statute, namely the existence of a financial relationship between BayCare and referring physicians practicing at the Heart Center MOB or Suncoast MOB, as required under the Stark Law, and an offer or payment of remuneration by BayCare to referring physicians, as required under the Anti-Kickback Statute. Additionally, Plaintiff has failed to designate specific facts showing there is a genuine issue for trial concerning whether BayCare provided benefits to referring physicians for the purpose of inducing patient referrals. Given the lack of evidence, Plaintiff has not shown that genuine issues for trial remain concerning his claim under the False Claims Act. Accordingly, it is

**RECOMMENDED**:

1. Plaintiff's Motion for Partial Summary Judgment on Liability (Dkt. 155) be **DENIED**.

2. Defendant's Motion for Summary Judgment (Dkt. 156) be **GRANTED**, and judgment be entered in favor of Defendant, BayCare Health System, on Counts I, II, and III of the First Amended Complaint.

**IT IS SO REPORTED** in Tampa, Florida, on December 16, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

- 19 -

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


Copies furnished to:
Counsel of Record